[File No. 6857.]

IN THE MATTER OF THE APPLICATION OF THEEL BROTHERS RAPID TRANSIT COMPANY FOR AN EXTENSION OF A CLASS "A" CERTIFICATE, ETC.

CARL THEEL, Bruce Theel, and Robert Theel, Copartners under the Name of Theel Brothers Rapid Transit Company, etc., Appellants, v. GREAT NORTHERN RAILWAY COMPANY, Northern Pacific Railway Company, Midnite Express, Inc., and Dakota Transfer & Storage Co., Inc., Respondents.

(6 NW(2d) 560.)

Opinion filed November 30, 1942.

*Myer R. Shark,* for appellants Theel Brothers Rapid Transit.
*F. J. Van Osdel,* for respondents Midnite Express, Inc.
*Murphy, Toner & Kilgore,* for respondents Great Northern Railway Co. & Northern Pacific Railway Co.
*C. D. Aaker,* for respondent Dakota Transfer & Storage Co.
*C. F. Kelsch,* Commerce Counsel, for Public Service Commission.

BURR, Ch. J. In September, 1940, Theel Brothers Rapid Transit Co., a copartnership, made application to the public service commission of the state for a certificate of public convenience and necessity and for a permit to operate motor vehicles in furnishing "Class A" freight service between Devils Lake and Fargo, paralleling the Great Northern Railway Company line from Devils Lake on what is known as the Aneta branch, through McVille, Aneta, Sharon, and other towns to Page on the New Rockford Minot Cut-off, from thence to Fargo, with extension from Pickert to Cooperstown and with closed car from Page to Fargo.

At that time the applicants were operating "Class A" service from Devils Lake to Bottineau and the intermediate towns of Starkweather, Cando, Rolla, Dunseith, etc., and were desirous of getting an extension of this "Class A" certificate already granted so as to include this motor freight service over highway number 20.

The application set forth the necessary schedules of time, distance, equipment, etc., required to be presented, together with the list of firms and corporations now furnishing similar service along this route: to wit, Dakota Transfer & Storage Co. of Grand Forks, Elsholtz-Tri-City Lines of Fargo and the Great Northern, the Soo and the Northern Pacific Railways.

Notice of the application was given to these competitors, and the Great Northern, the Northern Pacific Railways, the Midnite Express Company, the Dakota Transfer & Storage Company and Ray Kelly of Warwick, in his own behalf, appeared to protest against the granting of the application.

The hearing was set for Finley, on December 2, 1940. At that time Mr. Elmer E. Cart, then a member of the public service commis-

sion of the state conducted the hearing and the testimony was taken. In the fore part of January, 1941, the term of office of Mr. Cart ended and Mr. C. W. McDonnell became his successor. On May 23, 1941, the commission made findings of fact as follows:

"Findings of Fact

"1. That the applicant is able, willing and ready to perform public service as a Class 'A' common motor carrier operating over a fixed route on schedule time between fixed termini.

"2. That the applicant is now a Class 'A' common carrier operating northwest from Devils Lake to Bottineau; that the proposed service will constitute an extension of his route from Devils Lake to Fargo, via Tokio, Warwick, Hamar, Tolna, Pekin, McVille, Kloten, Aneta, Sharon, Finley, Pickert, Blabon, Hope, Colgate, Page, and Buffalo, with closed-door service between Fargo and Page, and extension of the service via North Dakota Highway No. 7 to Cooperstown.

"3. That there is now no Class 'A' common carrier motor service over this route.

"4. That the present and prospective rail service in said territory does not reasonably and adequately serve the communities on the proposed route.

"5. That the proposed service will not increase the cost of maintaining the highways of this state, or be detrimental to existing travel on said route, or existing transportation facilities in the territory to be served.

"6. That public convenience and necessity require the proposed service.

"7. That the applicant has established public convenience and necessity on said route."

Upon these findings the commission concluded that such certificate should be issued to the applicant and ordered:

"Order

"It is hereby ordered, that the application be granted, and the applicant be issued a Certificate of Public Convenience and Necessity for the operation of a Class 'A' common carrier motor freight service between Fargo and Devils Lake and return, via Tokio, Warwick,

Hamar, Tolna, Pekin, McVille, Kloten, Aneta, Sharon, Finley, Pickert, Blabon, Hope, Colgate, Page, and Buffalo, with closed-door service between Fargo and Page, and extension of the service, via North Dakota Highway No. 7 to Cooperstown."

From the order entered the respondents appealed to the district court and demanded a retrial of the cause and a review of the order. A special term was called to convene at Finley July 28, 1941, and on October 15, its findings of fact were made, as follows:

## "Findings of Fact

1.

"The present rail service of the appellant, Great Northern Railway Company, for transportation of merchandise and property to and from the towns and communities on the Aneta railroad line between Fargo and Devils Lake is adequate and satisfactory.

2.

"The present rail service of the appellant, Northern Pacific Railway Company, for the transportation of merchandise and property to and from Cooperstown and tributary territory is adequate and satisfactory.

3.

"The necessity claimed by the respondent, Theel Brothers Rapid Transit, for the truck service offered by it is based mainly on emergency demands.

4.

"During planting, harvesting, and threshing seasons of the year farmers put in rush orders for repairs and parts for their farm machinery and equipment, and dealers in motor vehicles desire fast deliveries of repairs and parts so that they will not be required to keep such parts and repairs in stock. However, farmers needing parts and repairs for their machinery usually get them in their own car regardless of public transportation facilities.

5.

"The highways are inadequate and insufficient to sustain the existing ordinary travel upon the route that would be followed by respondent, Theel Brothers Rapid Transit, if it were permitted to operate under the extension of the certificate granted by the respondent Commission.

6.

"The cost of maintaining such highways would be increased it respondent, Theel Brothers Rapid Transit, were permitted to operate under the extension of the certificate granted by the Commission.

7.

"The income of the appellant, Great Northern Railway Company, from the transportation carried on by it on the branch line involved in this action is not sufficient, according to the testimony submitted by the said Great Northern Railway Company, to pay the cost of operation of and taxes on said branch line.

8.

"The railway transportation furnished by the appellant, Great Northern Railway Company, is absolutely essential to the communities along the Aneta line of railway of said company.

9.

"Public convenience and necessity in the territory involved in this action do not require that the truck service proposed by respondent, Theel Brothers Rapid Transit, be granted."

The court concluded that the order granting the extension of the "Class A" certificate should be set aside and on October 16, judgment was so entered.

On October 25, the court made amended findings which include, principally, findings with reference to the transportation service provided by the Midnite Express, Inc. and the Dakota Transfer & Storage Company. Amended judgment was entered on these new findings and on April 13, 1942, the applicants appealed to this court from the original judgment of the district court entered on October 16, "and from the supplemental amended judgment entered in said proceedings in said court" on November 5, "and from the whole of such original and supplementary amended judgments; and hereby demand a trial de novo of all the issues of fact and law in said matter in the supreme court of the state of North Dakota."

Before referring to the evidence it is well to note that the hearing at Finley on December 2, 1940, was not had before the public service commission. The hearing was presided over by the chairman, Mr. Elmer E. Cart, the other members not being present. As already

indicated, Mr. Cart ceased to be a member of the commission in January, 1941, and when the cause came before the commission for consideration and determination upon the evidence taken the matter was determined solely upon the record—none of the commissioners having seen the witnesses nor having heard them testify. Consequently, the district court was deprived of that peculiar value which attaches to the presence of the presiding officers at the taking of testimony and the effect of observation and of hearing of the witnesses. The district court did have the value which attaches to the acumen and aptitude of skilled men whose business is to hear and determine such questions as the one involved—the value which attaches to their training and experience.

The determination of the facts harks back to the powers and the authority of the commission. Appellants urge that the findings, conclusions, and order of the commission are lawful because the commission had jurisdiction to make the order and that the findings and order were neither unreasonable nor arbitrary. They urge that "if present transportation facilities in the territory are inadequate or if public convenience and necessity require the service which the commission authorized then the commission's order is reasonable and lawful, and the district court erred in setting it aside." This principle cannot be controverted successfully.

The application is for an extension of a certificate already granted so as to include new territory. This territory is now served by a railway company and the proposed route parallels the Great Northern Railway Company to serve the towns on this Aneta branch.

The appeal centers largely on questions of fact and this is determined by the testimony taken before the commission. In this respect it is well to set forth some general principles governing the determination of such appeals.

Section 8, art. 2, chap. 164, Session Laws of 1933, provides: "Before granting a certificate to a common motor carrier; the commission shall take into consideration existing travel upon said route, the increased cost of maintaining the highway concerned, the effect on other essential forms of transportation, and existing transportation facilities in the territory for which a certificate is sought, and in case

it appears from the evidence that the service furnished or that could be furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

"This provision is a restriction upon the power of the commission in the granting of certificates of public convenience and necessity to motor trucks as common carriers of property." Tri-City Motor Transp. Co. v. Great Northern R. Co. 67 ND 119, 270 NW 100.

Among the purposes for which the utilities act was conceived was to prevent unfair and destructive competition, and the public service commission is the agency of the state vested with power to regulate and adjust such contingencies when they arise. This principle is set forth in Gilmer v. Public Utilities Commission, 67 Utah 222, 247 P 284, and is approved in Tri-City Motor Transp. Co. v. Great Northern R. Co. supra.

The courts do not have the jurisdiction, primarily, to determine administrative questions left to the public utilities commission, such as whether to grant a permit to an intrastate motor common carrier. Where there is compliance with the due process clause, and the evidence supports the findings of the commission, the court has no authority to substitute its judgment for that of the commission. Warren v. Bean, 167 Or 116, 115 P (2d) 167, 171, 40 PUR (NS) 106. Here was a case where the commission refused to grant a permit to a common motor carrier for hire. The circuit court reversed the commissioner and the supreme court reversed the circuit court.

Where a statute confers upon an administrative board administrative authority and duties of a quasi-judicial nature and the commission acted on a matter which is within the authority conferred by the statute the findings will not be disturbed where it is not shown they were made without appropriate procedure or that there was an abuse of authority, or disregard of controlling provisions and principles of law. Great Southern Trucking Co. v. Douglas, 147 Fla 552, 3 So (2d) 526, 40 PUR (NS) 521.

Under the provisions of § 6, art. 2, chap. 164 of 1933, "the commission is vested with power and authority . . . to supervise and regulate all common motor carriers of property . . . so as to insure adequate transportation service to the territory traversed by

such carriers, and so as to prevent substantial duplication of service between these common motor carriers, and between them and the lines of competing steam and electric railways; and not to substantially substitute the operation of motor common carriers for existing steam or electric transportation facilities. . . ."

"If a law is so applied and administered as to make unjust discrimination between persons in similar circumstances material to their rights, such denial of equal justice violates 'due process of law' and 'equal protection of laws' clauses of the Federal and state Constitutions." Howard Sports Daily v. Public Serv. Commission, 179 Md 355, 18 A (2d) 210, 38 PUR (NS) 197.

The orders made by the commission must be based upon findings, and the findings must be based upon substantial evidence. Lowden v. Illinois Commerce Commission, 376 Ill 225, 33 NE (2d) 430, 39 PUR (NS) 482.

The only question for determination on appeal to the supreme court from an order of the district court, reversing the public utilities commission is the sufficiency of the evidence to show that the order is not unreasonable or arbitrary. This is the holding of the supreme court of Nebraska in a matter where the railway company, over the protest of certain municipalities, applied to the railway commission for permission to discontinue passenger trains. The district court dismissed the application of the railway and the applicant appealed to the supreme court. The court held "where, however, a final order of the commission depriving a common carrier of substantial rights is based on findings without support in the evidence, it is unreasonable, arbitrary and reversible on appeal." Chicago, B. & Q. R. Co. v. Nebraska State R. Commission, 138 Neb 767, 295 NW 389, 391, 38 PUR (NS) 411.

"The court can set aside findings of public service commission only when such findings are of such a character that the court can clearly say they are unreasonable." Lake Superior Dist. Power Co. v. Public Serv. Commission, 235 Wis 667, 294 NW 45, 37 PUR (NS) 510. The district court was in no worse position to determine the weight to be given to the testimony of witnesses than was the commission itself, for the members of the commission did not hear the witnesses testify.

And this court is in no worse position than the district court in passing upon the weight of the testimony.

The applicants are a copartnership consisting of three brothers—Robert Theel, Carl R. Theel and Bruce K. Theel. The testimony on behalf of the applicants, seeking to show inadequacies of the transportation facilities already in existence, was furnished mainly by Robert Theel. He testified that for at least a month before the application was heard he made himself acquainted with the businessmen in every town sought to be served and these businessmen had stated to him there was considerable demand for the service which would be furnished if the extension were granted. The towns sought to be served were: Tokio, Warwick, Hamar, Tolna, Pekin, McVille, Kloten, Aneta, Sharon, Finley, Hope, Page, Cooperstown, and Pickert.

Upon examination he named various businessmen he had interviewed in these towns and testified they told him of the demand and the necessity for the service, such as George Engen of McVille, R. C. Lindsey of Page and many others. Theel testified that when he called on Engen the latter said he was in favor of it, but Engen testified that the service was not necessary. The same with Lindsey of Page—Mr. Theel claiming Lindsey told him it would be of good service, whereas Lindsey testified that it was not in the interest of the public. The witness testified that M. O. Haugen said the service would be a big improvement, but when M. O. Haugen testified he said the service was not necessary. Then Mr. Theel said he meant A. O. Haugen, but A. O. Haugen was not produced as a witness. Such contradictory situation existed in numerous instances. Many of those who made no comment to him when interviewed appeared at the hearing and testified that additional service was not required.

The respondents produced a large number of businessmen from various towns such as: C. A. Mange, R. A. Rukkey, T. A. Thurston of McVille, Ringstad, A. O. Raaen, I. A. Johnson, H. Halvorson and others of Aneta and all testified that the service was not necessary. The same with businessmen from the other towns. These men testified that the service was not necessary. A witness from Finley said it would be handy for his business, and one from Pickert testified to the

same effect. The very great weight of testimony given by business-men and others from these towns is against any demand or necessity.

Devils Lake jobbers were of the opinion the service would be a con-venience, and witnesses from Rolla, Cando, and other towns to the north and northwest of Devils Lake said it would be a help to their business. The main question before the commission was whether the extension of the certificate would be of benefit to the public and to the towns proposed to be served. It was to be a freight service.

In the case at bar there were one or two who testified that at certain seasons of the year there might be some benefit from the service be-cause of added ability to get repairs for harvesting machinery; but when we consider the schedule of time proposed in comparison with the schedule of time of service furnished by the Railway Company and the amount and character of probable business it is quite apparent this supposed advantage is largely imaginary. No one can read the testi-mony of the businessmen in these towns without being satisfied that the great majority were opposed to the extension of the certificate. Not only were they satisfied the present transportation facilities were adequate, but also that this additional service was not required.

We are aware of the fact that to the commission is entrusted the determination of such matters, and while the determination of the com-mission when acting in a matter which is confided to its discretion and judgment should not be reversed unless clearly wrong, yet the deter-mination by the commission is not conclusive; otherwise appeal and trial de novo would not be provided. Russell v. Great Northern R. Co. 68 ND 447, 281 NW 239. The district court reviewed all of the testimony that was taken before the commission.

It is not necessary to give a further epitome of the testimony of the host of witnesses who testified. We are satisfied by the shown record that the businessmen in the towns to be affected by the character of service to be rendered were opposed to the extension of the certificate. There was no demand for the service, no necessity for it shown—in fact the evidence is almost overwhelmingly to the contrary. The per-mission might well be helpful to the applicant, in competition with other carriers, but this is not the controlling factor. The procedure

is not designed for such purposes. Upon a careful consideration of all of the record we are satisfied that the judgment of the lower court should be affirmed and it is so ordered.

BURKE, MORRIS, CHRISTIANSON, and NUESSLE, JJ., concur.