We granted a rehearing to consider more fully two propositions urged by appellant with great earnestness. In general the first is: The court overlooked and misconstrued the statutes involved in their application to the principle that no public motor transportation license should be granted in a case where the territory to be served by this special license is served already by adequate transportational facilities which, if necessary, could and would be improved on the order of the public service commission.
The second is: the permit granted is too broad in that it permits competing service parallel to adequate service already in operation.
The first proposition concerns the zone. The zone created includes the city of McClusky. It is claimed there is no evidence of public convenience and necessity for this zone except such as *Page 238 
might inure solely to the benefit of residents of McClusky; that without this there is no need of granting the permit for this zone as the licensee has ample authority under the agricultural permit already granted to him, and McClusky has adequate transportational service today.
The creation of a zone is a matter primarily within the jurisdiction of the public service commission. The fact that a city within that zone is situated upon a railroad does not prevent the commission from determining there is a public necessity and convenience demand for the whole zone. That the city has ample transportation services furnished by the railroad, or which could be furnished by the railroad, does not prevent the commission from considering public necessity and convenience for commodities demanded by the residents of the city and for which the railroad services are not adequate. The evidence to show public necessity and convenience for the entire zone may be obtained from any source available. In prescribing the powers and privileges of the applicant the commission must, perforce, take into consideration the transportation services available from the railroad company, whether it be for the city or for the remainder of the zone. The commission cannot be required to eliminate the town. Its view of the entire situation must be governed broadly. Where there are existing parallel lines of service adequate in their nature these must be considered favorably. See Tri-City Motor Transp. Co. v. Great Northern R. Co. 67 N.D. 119, 270 N.W. 100.
The function of the commission is to oversee and provide for adequate transportation services if available. The permit should not be granted simply to permit the applicant to make a living at the expense of established systems.
It appears that during the last few years, owing to the great emergency caused by the war, the traffic demand upon railroad facilities and equipment was so great the service rendered was affected to some extent. The commission had the right to take this into consideration even though it might consider the emergency as temporary. The public should not suffer even if the situation created conditions over which the railroad had little if *Page 239 
any control, if these profoundly affected public necessity and convenience, and could be remedied by the commission. The privilege which the commission gives the applicant it may take away when the emergency passes, if it does.
In addition the commission is not confined to the immediate present. It must have a broad view and a far look and though public necessity and convenience may seem to be somewhat trivial at first, to the commission charged with the duty of oversight it may appear conditions were so shaping themselves there is a growing demand now and for the immediate future and thus the commission be required to make provision therefor. It is not merely the necessity for the next day; but for the morrow which governs the commission.
If the condition be an emergent one, because of the war, and of such a character that the commission deems it necessary to grant the permit the commission has also the power to discontinue it if the emergency disappears and there is no longer public necessity.
The second point deals with the power granted by the permit in relation to the transportational services already in existence. In the main opinion we called attention to the finding of the commission relative to the existing railroad facilities, and also to our decisions with reference to the necessity for the commission taking such into consideration. Theel v. Great Northern R. Co. 72 N.D. 280, 6 N.W.2d 560. In the main opinion we referred to the fact that the commission found, "That the motor freight service now furnished by the transportational facilities existing within the above-described territory is not reasonably adequate to serve the public needs thereof." Strictly speaking this finding is limited to the "transportational facilities" furnished by "motor freight service." Appellant urges that the permit granted is too broad in its scope; that under the provisions thereof the licensee was permitted, or at least not forbidden, to parallel its lines and transport freight to and from McClusky to all points along the railroad line on which McClusky is situated and to or from any distance — in effect giving him permission to transport freight which ordinarily would be *Page 240 
transported by the railroad company, and thus become an established competitor; and that there was no showing whatever that such competition was justifiable or necessary.
The main complaint of the appellant in this respect is that the permit is too broad and that the decision of the court did not take care of this feature. There is merit in this complaint. Section 49-1814, Rev Code provides:
"Before granting a certificate to a common motor carrier, the commission shall take into consideration:
1. Existing travel upon the route of the carrier;
2. The increased cost of maintaining the highway concerned;
3. The effect on other essential forms of transportation; and 4. Existing transportation facilities in the territory for which a certificate is sought.
In case it appears from the evidence that the service furnished or that could be furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."
It is not the purpose of the statute to permit the establishment of an additional transportational service in a case where the existing service is adequate. The record shows that the appellant furnishes six days per week railroad service to McClusky from points east and west; that the branch line on which McClusky is situated connects with another branch line at Carrington and from there connects with the main line at Jamestown. No witness testified that this service was not continuous six days in the week. It is apparent that the railroad furnishes adequate transportational services from and to McClusky from all towns along these lines. The evidence dealt largely with what might be called cross-country service and while this cross-country service may not be very extensive, nevertheless, the commission found and justifiably so, that such service was necessary from the standpoint of public necessity and convenience. However, there is nothing in the record to show that additional transportational service is necessary paralleling the railroad. Testimony showing sporadic instances is not enough.
The complaint of the appellant is set forth in its Specifications *Page 241 
of Error II and III. The record of the hearing shows that, to a large extent at least, the evidence furnished by the applicant was directed to cross-country service and it is clear this was the subject under consideration by the commission. Under the permit granted the applicant would have the right to transport the commodities described to McClusky from all towns along the branch line and from McClusky to these towns. Thus the applicant could parallel railroad service from Turtle Lake the western terminus of the branch and from all points along that line to and from Jamestown and other points on the main line. We take judicial notice of the fact that the appellant has service lines of branch lines of road running from the main branch from Jamestown to Leeds and that also the territory north of McClusky is serviced by the main line of the Soo railroad running in a northeasterly and northwesterly direction. Between those roads there are considerable cross-country settlements, and shipments to the zone from these various places via railroad service require long and circuitous routes. The commission found public necessity and convenience for this cross-country service existed and we are convinced it was not the purpose of the commission to permit duplication of or competition with the railroad along the railroad line from McClusky, easterly to Carrington, Jamestown, Fargo, etc. However the permit granted made no such limitation. There is no testimony to show necessity for such duplication nor is there any proof adduced to show that if the railroad service now existing is not adequate it could not and would not be remedied by the appellant, and particularly after the emergency would cease.
We adhere to the view that the commission was justified in granting the permit sought. The commission is the body charged by law with the determination of such issues. Where service is now rendered and a newcomer seeks entry into the field he must show the public requires the services sought to be furnished. This quotation from a recent opinion of the United States Supreme Court is pertinent:
"The Commission is the guardian of the public interest in *Page 242 
determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority. Interstate Commerce Commission v. Parker, 326 U.S. 60, 89 L ed 2051, 65 S Ct 1490. Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies."
United States v. Detroit C. Nav. Co. decided November 5, 1945. 326 U.S. 236, 90 L ed (Adv 12) 66 S Ct 75.
The commission is directed to modify the certificate and license granted so as to exclude duplicate service along the lines of the appellant as indicated. With this modification we adhere to the decision already rendered and affirm the judgment.
CHRISTIANSON, Ch. J., and NUESSLE and BURKE, JJ., concur.