PUBLIC UTILITIES COMMISSION *vs.* F. GILBERT CONGDON.

Cumberland.     Opinion, February 11, 1941.

*Frank M. Libby,* for Public Utilities Commission.
*Carl C. Jones,*
*Richard K. Gould,* for respondent.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

STURGIS, J.    The Public Utilities Commission of Maine having suspended the certificate which it had issued to F. Gilbert Congdon of Portland, Maine, authorizing him to operate motor vehicles on the public ways as a common carrier of freight or merchandise for hire, exceptions alleged, having been duly allowed and certified, are before the Law Court for determination.

Under Sections 2-9 inclusive, of Chapter 259 of the Public Laws of 1933 as amended, known as the Motor Carrier Act, the operation of motor vehicles upon any public way in the business of transporting freight and merchandise for hire as a common carrier over regular routes between points within the state, without a certificate from the Public Utilities Commission declaring that public necessity and convenience require and permit such operation, is prohibited. All persons, firms or corporations operating or causing the operation of motor vehicles transporting freight or merchandise for hire upon the public ways within the state, other than common carriers over regular routes and subject to an exception not here of moment, are declared to be "Contract Carriers" and prohibited from operating or causing to be operated such motor vehicles without having obtained a permit from the Public Utilities Commission in the manner and subject to the limitations there prescribed. The Public Utilities Commission is authorized to make necessary rules and regulations and to suspend the certificate of a common carrier or the permit of a contract carrier for any violation thereof or of the Act. In Section 10 (A) of the Motor Carrier Act as amended by P. L. 1935, Chap. 146, the operation of motor vehicles for the local transportation of property for hire within limits there defined and subject to certain prohibitions is exempted from the foregoing provisions of the statute.

The agreed statement of facts which accompanies the bill of exceptions shows that the respondent, F. Gilbert Congdon, has for many years been engaged in the trucking business in Portland and has maintained there a regular and established place of business. Since the enactment of the Motor Carrier Act, he has not only operated motor vehicles in the business of transporting freight and merchandise for hire as a common carrier over regular routes between points within the state under a common carrier certificate, but has also operated local pick-up and delivery trucks for the transportation of property for hire in the City of Portland and within fifteen miles thereof, for which he holds no certificate or permit. He has filed a schedule of rates applicable to his long-haul business under his common carrier certificate by concurring in the "Commercial Motor Vehicle Association of Maine, Class and Commodity Rate Tariff MPUC No. 1," in effect by authority of the Public Utilities Commission, and by filing in his own behalf an additional commodity tariff.

During the month of January, 1940, F. Gilbert Congdon transported for hire sundry shipments of merchandise from Augusta, Camden and Hiram to Westbrook, a city adjoining Portland and within fifteen miles therefrom but not a specified pick-up or delivery point in any scheduled routes over which he was authorized to operate motor vehicles under his common carrier certificate or a point of service included in the rate tariffs in which he concurred and filed. In handling these shipments, he hauled the merchandise to Portland from the points of origin in one or more of his vehicles which had been certified by the Public Utilities Commission, transferred it there to one of his local pick-up and delivery trucks and completed the transportation by making delivery to the consignee at point of destination. Through waybills from point of origin to destination were delivered to the shippers. The rates charged were, in each instance, in accordance with the applicable minimum established rates. On account of the transportation of these shipments, on April 22, 1940, the respondent's common carrier certificate No. 90, then in force, was suspended for thirty days.

The Public Utilities Commission, as we understand its decision and the reasons therefor as therein stated and argued on the brief, suspended F. Gilbert Congdon's common carrier certificate be-

cause, under its interpretation of the Motor Carrier Act, in transporting the several shipments here involved from Portland to Westbrook, the operation of the motor vehicles which he used was not within the exemption of Section 10 (A) of the Act but within its prohibitions, and without a certificate or permit therefor, the operation was a violation of the law.

Section 10 (A) of the Motor Carrier Act as amended by P. L. 1935, Chap. 146, reads as follows:

"There shall be exempted from the provisions of the foregoing sections . . . the operation over the highways of motor vehicles while being used within the limits of a single city or town in which the vehicle is registered by the secretary of state or in which the owner maintains a regular and established place of business, or within 15 miles, by highway in this state, of the point in such single city or town where the property is received or delivered, but no person, firm or corporation may operate, or cause to be operated, any motor vehicle for the transportation of property for hire beyond such limits without a certificate of public convenience and necessity or a permit to operate as a contract carrier; nor may any such person, firm or corporation participate in the transportation of property originating or terminating beyond said limits without holding such a certificate or permit unless such property is delivered to or received from a carrier over the highways operating under a certificate or permit issued by the commission or a steam or electric railway, railway express or water common carrier; . . . ."

Other exemptions there enumerated are not here of concern.

The Public Utilities Commission advance as the primary reason for their decision that the respondent's local trucks, while delivering the merchandise in Westbrook which he had brought to Portland from Augusta, Camden and Hiram in his long-haul certified trucks, were not being used within fifteen miles by highway of the point in the state where the property was "received or delivered," nor did he "participate" in the transportation of property originating or terminating beyond the limits within which he was authorized to operate as an exempt carrier which was "delivered to or received from" a carrier over the highways operating under such a certificate or

permit issued by the commission. The precise point made is that the words *"received or delivered,"* and *"delivered to or received from,"* and *"participate,"* as used in this statute, have reference only to a receipt from and a delivery to or a participation with another person, firm or corporation and do not apply to a mere transfer of property already in transportation from one truck to another owned by the same carrier. Applying this construction of the law to the instant facts, the Public Utilities Commission insist that the respondent did not *"receive"* the property he transported to Westbrook in Portland, where it was transferred from his certified motor vehicles to his pick-up and delivery trucks, but at the points of origin of the shipments in Augusta, Camden and Hiram, and in transferring the shipments from his long-haul certified vehicles to his pick-up and delivery trucks, he did not "participate" in a transportation with nor was the property "received" from a carrier operating under a certificate or permit within the meaning and intent of Section 10 (A) of the Motor Carrier Act.

We think this construction of Section 10 (A) of the Motor Carrier Act by the Public Utilities Commission is correct. The enactment is entirely free from technical words or phrases. It must be construed according to the common meaning of the language. R. S., Chap. 1, Sec. 6 I; *Terminal Co. and Railroad Co.* v. *Railroad*, 127 Me., 428, 144 A., 390 ; *State* v. *Blaisdell*, 118 Me., 13, 105 A., 359 ; *Thurston* v. *Carter*, 112 Me., 361, 92 A., 295. One does not receive property from or deliver it to himself when it is already in his possession. The words "receive" and "deliver," in themselves, indicate a transfer of possession from one person, firm or corporation to another. The same is true of "participate." By all definitions, it means to take part or have a share in common with others in something. Words & Phrases, First Ed., Vol. 6, 5185 ; Webster's New International Dictionary (Second Ed.). We cannot assume that the legislature intended to use these words in a strained or inappropriate sense. Taken in their meaning as commonly understood and defined, they indicate clearly that the legislature did not intend to include within the exemption provisions of Section 10 (A) of the Motor Carrier Act a local motor carrier of property for hire and the vehicles which he operates, when and while, through a mere transfer of the property from one of his trucks to another, they are

being used to extend his carriage of freight and merchandise beyond the specified termini or pick-up or delivery points which he is authorized to serve as a CERTIFIED COMMON CARRIER. In making such an extension of service, the operation of the pick-up and delivery trucks of the local carrier without a certificate or permit is a violation of the Motor Carrier Act. Whether, under Section 10 (A) of the Act, the carrier can, within the specified termini or pick-up and delivery points of his scheduled routes as a certified common carrier, use his local trucks, without a certificate or permit, merely to pick up or deliver his long-haul loads and not to unlawfully extend his transportation thereof, although argued on the brief, is not in issue and is not here decided.

The Public Utilities Commission, however, found and stated another reason for their decision. In earlier cases, they had ruled that under Section 10, Chap. 259, P. L. 1933, the original enactment of the exemption provision of the Act, a local motor vehicle carrier might operate at will without being subjected to the regulatory features of the law so long as he confined his operations exclusively within the city where his vehicles were registered or he maintained a regular and established place of business, but if he was given a permit to extend his operations beyond those limits, he would also require a permit to operate within them. In re John W. Kingston, X No. 48, Maine P. U. C. Decisions; In re Sumner C. Leighton, X No. 303, Maine P. U. C. Decisions. This ruling remained in force when the exemption provision of the Motor Carrier Act was amended and re-enacted as Section 10 (A), Chap. 146, P. L. 1935. As stated in the record, it "has been consistently followed in all cases." And in conformity with it, on April 20, 1939, the Public Utilities Commission mailed out notices to all motor vehicle common carriers, in part, of the following tenor:

"The Commission is of the opinion that a correct interpretation of said section 10 (A) exempts the operation of the motor vehicles of the purely local carrier and does not exempt the operation of the vehicles of the long haul carrier operating under a certificate issued by the Commission.

"Therefore motor vehicle common carriers operating under and by virtue of a certificate issued by this Commission must

discontinue the above practice and may serve, with their own vehicles, only such points as appear on the schedules attached to their certificates and may serve other points only by transfer with other motor vehicle common carriers having a right to serve such other points."

An exception is expressly reserved to the apparent incorporation of these rulings into the decision here on review.

We do not think that Section 10 (A) of the Motor Carrier Act exempts only "the operation of the motor vehicles of the purely local carrier" and not those "of the long haul carrier operating under a certificate." While, as already pointed out earlier in this opinion, the statutory exemption does not apply to the operation of the vehicles of a carrier for which he has no certificate or permit when they are being used to extend his own long-haul business, we are not of opinion that other motor vehicles which he owns and operates in purely local transportation for hire as defined in Section 10 (A) are thereby excluded from the exemption provision, or by the fact that the local carrier is also a common carrier operating under a certificate or permit issued by the commission. We find no such express or implied exclusion in the Motor Carrier Act. The fact that the respondent operated local pick-up and delivery trucks owned by him in transporting the shipments of merchandise in controversy from Portland to Westbrook when and while he was also a common carrier operating under a certificate issued by the Public Utilities Commission was not a valid reason for suspending his certificate. Exceptions do not lie, however, to reasons given for a ruling, but only to the ruling itself. If the decision below is correct, it must be affirmed although the lower court relied upon a wrong ground or gave a wrong reason. *Snell* v. *Libby*, 137 Me., 62, 15 A. (2d), 148; *Helvering* v. *Gowran*, 302 U. S., 238, 245, 58 S. Ct., 154.

Upon this record, the respondent F. Gilbert Congdon violated the Motor Carrier Act of this state, and the suspension of his certificate as a motor vehicle common carrier therefor by the Public Utilities Commission was warranted. The exceptions reserved cannot be sustained. The mandate is

*Exceptions overruled.*

BARNES, C. J., having retired, does not join in this opinion.