[File No. 7219]

GREAT NORTHERN RAILWAY COMPANY, a corporation, Appellant, v. C. W. McDONNELL, Ben C. Larkin and Elmer Cart as members of the Public Service Commission and N. O. Jones, State Highway Commissioner of the State of North Dakota, Respondents.

(45 NW2d 721)

Opinion filed December 19, 1950.   Rehearing denied Feb. 9, 1951.

*Herbert G. Nilles,* for appellant.

*Wallace E. Warner,* Attorney General, *Richard P. Gallagher,* Assistant Attorney General and *Clifford Jansonius;* for respondents.

Morris, J.  In this proceeding the State Highway Department of North Dakota seeks the authority of the Public Service Commission of the state to abandon an underpass under the track of the Watford City branch of the Great Northern Railway about five miles west of Watford City and construct a grade crossing approximately 2600 feet west of the underpass with automatic warning signals installed at the grade crossing.  The application was heard at a public hearing at Watford City on April 22, 1949. The Public Service Commission made findings of fact and conclusions upon which it entered an order granting the application of the State Highway Department.  The Great Northern Railway Company appealed from this order to the District Court of McKenzie County on July 15, 1949.  The district court, upon application of the railway company, directed the Public Service Commission to hold an additional hearing and take further evidence on the issues involved.  A second hearing was had pursuant to this order, which resulted in these findings by the Public Service Commission:

"(1) The present railroad underpass on U. S. Highway No. 85, located approximately five miles west of Watford City, North Dakota, is difficult to keep open for highway traffic during certain periods of the year due to accumulations of snow and water therein.

"(2) The curvature of both approach curves to the railroad underpass is greater than curvature permitted by modern standards of highway construction under conditions set forth herein.

"(3) It would be impracticable for the Highway Department to obtain right-of-way to reduce highway curvature to within permissible limits on the west approach to the present railroad underpass.

"(4) Establishment of the proposed railroad-highway grade crossing, protected by automatic warning signals, will not be unduly hazardous to life and property considering the volume of railroad and highway traffic involved."

Upon these findings the Public Service Commission made conclusions favorable to the contentions of the State Highway Department and entered a second order granting that department's application. The railroad company again appealed to the district court, where the matter was tried upon the entire record which was made at both hearings before the Public Service Commission. The district court then made these findings of fact:

## I.

"That all of the Findings of Fact made by the Public Service Commission are supported by substantial evidence and that the same should be approved and affirmed.

## II.

"That the Conclusions and Decision of the Public Service Commission are supported by its Findings of Fact.

## III.

"That the Decision and Order of the Public Service Commission is in accordance with law; that the constitutional rights of the appellant have not been violated; that the provisions of the statutes regarding hearings before administrative agencies have been followed; that the appellant received a fair hearing; that the provisions of the statute regarding appeals from determinations of the administrative agencies have been followed."

The district court made conclusions of law upon its findings of fact and directed that the second order of the Public Service Commission be affirmed. A judgment was entered pursuant to this order from which the railroad company appeals to the supreme court.

The appeal to the district court, and in turn to this court, is taken pursuant to Chapter 28–32 RCND 1943, known as the Administrative Agencies, Uniform Practice Act. The judgment

of the district court "may be reviewed in the supreme court on appeal in the same manner as any case tried to the court without a jury may be reviewed," Section 28–3221 RCND 1943. Section 28–3219 RCND 1943 sets forth the scope of review upon appeal from the agency to the district court and provides:

"The court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact."

The appellant does not argue that its constitutional rights are being violated, nor does it raise any questions of procedure. The chief attack made on the order of the Public Service Commission is that the findings of fact are not supported by the evidence. Before discussing the facts, we turn to the statutes pertaining to the authority of the State Highway Department and the Public Service Commission with respect to the location of highways and railroad crossings.

It is conceded that Highway No. 85 is a part of the state highway system coming within the jurisdiction of the State Highway Department. Under Section 24–0102 RCND 1943, the designation, location, creation, and determination of highways which constitute a part of the state highway system are vested exclusively and solely in the State Highway Department. Where a dispute arises between properly authorized public officials and a railroad regarding the establishment, vacation, or relocation of any crossing of a public highway and a railroad, either party may file a petition with the Public Service Commission setting forth the facts and submitting the matter to it for determination. Section 24–0910 RCND 1943. This procedure was followed here by the filing of a petition by the State Highway Department.

Section 49–1113 RCND 1943 provides: "The commission, up-

on written complaint made to it by any officer, board, or agency having jurisdiction over public highways in this state, or upon its own action, shall investigate and determine whether any railroad grade crossing over any public highway in the state is dangerous to life and property and may order the same protected in any manner the commission may find reasonable and proper, including the requirement that the railroad separate the grades."

The North Dakota State Highway Department plans to rebuild and, to some extent, relocate that portion of U. S. Highway No. 85 extending west from Watford City in McKenzie County a distance of between five and six miles. In order to conform to the present approved standards of highway construction, the department considers it necessary to abandon the use of the present railroad underpass located approximately five miles west of Watford City. The highway between Watford City and the underpass is located on the north side of the Great Northern Railway tracks, and west of the underpass it is on the south side. The plan of the Highway Department is to continue the highway on the north side of the railroad tracks to a point 2500 or 2600 feet west of the underpass and then carry it to the south side of the railroad tracks by means of a grade crossing. The underpass will then be abandoned. In other words, the State Highway Department has determined to relocate the highway for some 2500 feet west of the underpass and in order to make that relocation possible has obtained the consent of the Public Service Commission to install a grade crossing. In support of its action the State Highway Department contends that because of the nature and location of the underpass and the natural facilities for approaching it, a new highway cannot be built through it that will comply with modern standards of highway construction. The highway approaches the underpass on the north side at a curve of 15° 26′ and at a curve of 12° on the south side. It passes under the railroad through a long steel span with a 49 foot lateral clearance and a vertical clearance of 14.3 feet above the highway. This span is in the center of a wood trestle that has an overall length of 166 feet.

The natural drainage of water in the area of the underpass is from north to south. A watercourse flows through the under- pass beside the highway and east of the center span. It is in the form of a ditch about 30 feet wide at the top and 15 feet at the bottom. It has a depth of five feet below the surface of the road. This watercourse joins a larger channel a short distance farther south. The present highway has a width of from 23 to 24 feet between the shoulders.

At the first hearing before the Public Service Commission, an engineer of the State Highway Department stated that the underpass had. given the department a good deal of trouble on account of the fact that it is located in a draw and not only carries highway traffic, but has to act as a drainage structure, and that sharp curves on each side of the underpass create a serious hazard to public travel.

At the second hearing the engineer of surveys and plans for the State Highway Department was a witness. He testified that the department had difficulty in maintaining the highway through the underpass in the winter, due to snow. With respect to the curves approaching the underpass, he stated that the standards of the State Highway Department require a curve of four degrees or less, and that it would be impossible to construct a curve south of the underpass that would conform to that standard on account of the location of buildings of a farmer by the name of Peterson, without isolating the buildings from the rest of the farm and carrying the highway across another watercourse. Other witnesses who live in the vicinity testified to the difficulty in maintaining the highway through the underpass due to snow in the winter and to water and ice in the spring. The highway cannot be raised because of the limitations of overhead clearance.

The division engineer. of the Great Northern Railway in charge of the division in which the underpass is located, testified that the curvature of the highway, both north and south of the underpass, could be reduced to eight degrees without interfering with Mr. Peterson's farm buildings on the south and that such a curvature was not excessive for highway traffic. He also pro-

posed to protect the curves with caution signs. Another engineer employed in survey work for the railroad company testified that from a point in the center of the highway 300 feet southwest of the center of the underpass you can see to a point 250 feet north and east of the center of the underpass so that there is a clear view of 550 feet, and that coming from the other direction you have a similar view. He also stated that the drainage situation could be taken care of satisfactorily by cleaning out the channel of the waterway, as it is sufficiently large at the present time. Thus it appears there is considerable conflict between the engineers for the Highway Department and the engineers for the railroad with respect to the feasibility of continuing the use of the underpass.

With respect to the underpass, the Public Service Commission found that it is difficult to keep open for highway traffic during certain periods of the year due to accumulation of snow and water; that the curvature of both approach curves is greater than the curvature permitted by modern standards of highway construction under existing conditions; and that it would be impracticable for the Highway Department to obtain right of way to reduce the highway curvature to within permissible limits on the south side of the underpass.

The Highway Department proposes to shift the location of the highway from the underpass to a grade crossing some 2500 feet west, where it is planned to design the angles of the crossing and curvatures of the highway to comply with the requirements of the Federal Public Roads Administration. This crossing will be protected by automatic warning signals. In the opinion of the department engineers, a crossing so constructed and so protected will not be unduly hazardous to traffic. The traffic count on Highway 85 at this point is about 350 vehicles per day. The railroad runs on the average about three trains per day over its track. On week days a passenger train runs each way and a freight train goes into Watford City one day and comes back the next. Occasionally there are extra trains, especially for stock shipments at certain seasons of the year. Local residents who testified are divided as to the desirability of the grade

crossing, but a majority feel that it is more hazardous than the underpass.

The grade crossing and approaches to the track will be constructed by the Highway Department. The railroad will be required to plank the crossing between the rails. The cost of constructing warning signals will be borne 90 per cent by the Highway Department and 10 per cent by the railroad. Their maintenance will be wholly the responsibility of the railroad, which will pay all maintenance costs. The nearest warning signals now in operation are at Fairview, Montana, some 60 miles distant.

The railroad vigorously attacks the Highway Department's plan to carry the highway over a grade crossing on the ground of safety. The division engineer testified that it has been his experience that grade crossings result in crossing accidents, even though they are built according to the best engineering skill and are protected by the most modern devices. The railroad also contends that the Highway Department decided to install the grade crossing without proper consideration of other alternative possibilities. It suggests two such possibilities. One is to eliminate the necessity of a crossing altogether by continuing the highway on the south side of the track to a point south of Watford City. This plan the Highway Department says it has considered and rejected in the interests of service to the community. As an additional hazard incident to the grade crossing, the railroad emphasizes the existence of a cut some twelve or fifteen feet deep about 1,000 feet east of the proposed crossing which would conceal or partly conceal trains approaching from the east until they passed out of the cut, and argues that this would be particularly dangerous for drivers also coming from the east on the north side of the track, as the trains would be approaching from the left and rear of the drivers as they approach the crossing. The railroad suggests that an overpass might be constructed at some high point along this cut. The engineer of surveys and plans for the State Highway Department testified that the department had studied the matter of an overhead crossing and that the biggest objection to it was the

cost. He pointed out that the traffic on both the highway and railroad was comparatively light and money spent for the overhead would reduce the funds available for general highway construction. For those reasons the Highway Department rejected the alternative of constructing the overhead crossing.

The Public Service Commission found that: "Establishment of the proposed railroad-highway grade crossing, protected by automatic warning signals, will not be unduly hazardous to life and property considering the volume of railroad and highway traffic involved."

The trial court, after a thorough study and consideration of the evidence, as disclosed by his memorandum opinion, determined that the findings of fact made by the Public Service Commission are supported by substantial evidence and that its conclusions and decisions are supported by its findings of fact.

This case comes to us on appeal to be reviewed "in the same manner as any case tried to the court without a jury may be reviewed," (Section 28–3221 RCND 1943). We try the case anew upon the record not as an adminstrative body, but as a court exercising judicial powers but not administrative discretion.

The administrative power to locate highways of the state highway system is vested by statute (Section 24–0102 RCND 1943) in the State Highway Department. Rode v. State Highway Commission, 58 ND 249, 225 NW 801. When the construction of such a highway requires the installation of a railroad crossing regarding which an agreement cannot be reached with the railroad, the controversy must be determined in the first instance by the Public Service Commission, acting in a quasi judicial capacity pursuant to the Administrative Agencies, Uniform Practice Act. This proceeding originates outside of the judicial branch of the government and comes to use for review through procedure prescribed by the legislature that does not contemplate that we exercise legislative or administrative functions in our determination. Such power may not be conferred upon us.

"No duties shall be imposed by law upon the supreme court or

any of the judges thereof, except such as are judicial," Section 96 ND Constitution.

See also in Re Theel Brothers Rapid Transit Co., 72 ND 280, 6 NW2d 560.

The railroad argues that the Highway Department has given insufficient study and consideration to the alternate plans or possibilities of constructing an overpass or continuing the highway along the south side of the railroad track to completely avoid the necessity of a crossing. The testimony shows that consideration was given to these alternate plans and that they were rejected. The extent of study to be devoted to them was clearly within the administrative discretion of the department and presents no judicial question for review. In the first instance, the Highway Department decided to build its new highway over a grade crossing instead of through the underpass. Its reasons and the evidence supporting it were presented to the Public Service Commission and findings made supporting the contention of the Highway Department. A trial in the district court upon the records made at two hearings before the Public Service Commission resulted in a decision by that court "That all of the Findings of Fact made by the Public Service Commission are supported by substantial evidence and that the same should be approved and affirmed;" We have reviewed the record on this appeal and agree with the district court. The judgment appealed from is affirmed.

NUESSLE, C. J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.