**WILLIAMS ELECTRIC COOPERATIVE,
Inc., Complainant and Appellant,**

v.

**MONTANA–DAKOTA UTILITIES CO.,
Respondent.**

No. 7584.

Supreme Court of North Dakota.

Sept. 27, 1956.

Rehearing Denied Dec. 14, 1956.

Bjella, Jestrab & Neff, Williston, for appellant.

Burk & O'Connell, Williston, and Earl H. A. Isensee, Minneapolis, Minn., for respondent.

JOHNSON, Judge.

This is an appeal from a judgment of the district court of Williams County, affirming an order dismissing a complaint made by the appellant against the respondent and heard before the Public Service Commission.

The contentions of the appellant were divided into two claims. The first alleges that the appellant and the respondent had entered into an agreement, dated July 21, 1952, to settle a dispute between them as to which areas in the vicinity of Williston, North Dakota, each was to serve with electricity; that the appellant had performed all the conditions of the agreement, but that the respondent had willfully and wrongfully violated the terms thereof. The second claim alleges that the respondent had unlawfully extended its electrical distribution and transmission lines in violation of Section 49–0301, NDRC 1953 Supp.; that unless respondent is restrained by an order to cease and desist the complainant (appellant) would suffer irreparable injury by enticing away of its present and prospective customers, necessitating the construction of duplicating electrical lines injurious to it and to the

public interest, and for which damages are not capable of exact proof. Both claims allege that these acts will interfere unreasonably with the service and system of the complainant (appellant). To this complaint the respondent entered and filed a special appearance alleging that the Commission had no jurisdiction either to construe or enforce the contract, that being a judicial function; that the complaint did not set forth facts sufficient to constitute a basis for action by the Commission or to apprise the respondent of the issues involved.

From the complaint and the evidence it appears that the appellant objected to extensions of electric service by the respondent to property designated as the Edward Hamann property, Blox, Inc., North Dakota Concrete Products Company, Williston Basin Refining Corporation, Matt Anderson at Ray, and Amerada Trailer Camp at Tioga. There was some discussion concerning the Njos property, but as we shall see later, that is not involved in this proceeding.

The Public Service Commission set this matter for hearing on October 16, 1953, at Williston, North Dakota. During this hearing the appellant attempted to introduce in evidence facts with reference to the extension by the respondent of its electrical lines in the vicinity of the cities of Ray and Tioga, which it alleged were unlawful. The respondent objected to the introduction of this evidence on the ground that the original complaint was not drawn with sufficient particularity to apprise the respondent of this issue. The Public Service Commission agreed with this contention and recessed the hearing to November 30, 1953, and granted the appellant the right to enter and file an amended complaint. Upon resumption of the recessed hearing the respondent reasserted its special appearance and filed an answer to the amended complaint. The respondent asserted that its participation in the

hearing and the filing of its answer did not constitute a waiver of its special appearance. In its answer the respondent generally denied the allegations of the complaint except as admitted. It acknowledged the execution of the agreement dated July 21, 1952; but alleged that under the rules of the Public Service Commission, particularly rule 23, the respondent was obliged to serve new customers irrespective of the areas in which such customers might be located; that the contract had been terminated; that if it had not been terminated, the appellant had not complied with paragraph 6 thereof, requiring written notice to the respondent setting forth unforeseen developments and requesting a meeting to resolve the difference, and that until it did so, it was in no position to complain; that the appellant had also violated the terms and conditions of the agreement.

The answer further generally asserted that the extensions of the electrical line of the respondent to the parties named in the complaint were lawful and in accord with the statutes, particularly Section 49–0301, NDRC 1953 Supp., and that the respondent is not required to have a certificate of public convenience and necessity for such extensions.

The Public Service Commission took extensive testimony upon the issues involved. It made findings of fact, conclusions of law, and an order dismissing the complaint of the appellant.

The Williams Electric Cooperative, Inc., appellant here, appealed from the decision of the Public Service Commission to the district court of Williams County, North Dakota. The matter was heard by the district court upon the record made in the Public Service Commission and the court affirmed its decision. The Williams Electric Cooperative appealed from the judgment of dismissal to this court.

Upon the appeal to the district court the appellant presented and argued twenty-nine

specifications of error. In this court it presented these contentions under five main points:

1. Contract;

2. That the respondent's installation complained of was constructed without a certificate of public convenience and necessity required by Section 49–0301 as amended and in violation of the complainants' rights under Chapter 10–13, NDRC 1943;

3. That rule 23 of the Public Service Commission, Standards of Electric Service, has no application to the issues;

4. That the findings are unsupported by the evidence, and the conclusions unsupported by the findings;

5. The appellant was denied a fair hearing.

The issues thus argued and presented by the appellant reduce themselves to a determination of the following questions:

1. Does the Public Service Commission have jurisdiction to construe and enforce the contract entered into between the appellant and the respondent on July 21, 1952?

2. Were the extensions of transmission and distribution lines made by the respondent, and complained of in these proceedings, in violation of the statutes, and particularly Section 49–0301, NDRC 1953 Supp.?

3. Was the appellant denied a fair hearing in these proceedings?

Insofar as it is necessary to an understanding of the issues involved, we set forth the findings, conclusions and order of the Public Service Commission. It found as facts:

"3. On or about September 14, 1953, Montana-Dakota Utilities Company effected an extension of its electric distribution system to serve the North Dakota Concrete Products Company situate in Section 19–154–101 across the road from the city limits of Williston, North Dakota.

"4. During September, 1953, Montana-Dakota Utilities Company effected an extension of its distribution system about one-half a mile east of the above-mentioned North Dakota Concrete Products Co. to serve the Williston Basin Refining Corporation in Section 19–154–101.

"5. Commencing on or about the 16th day of February, 1953, MDU effected an extension of its electric distribution system to render electric service to Blox, Inc., a corporation with its place of business located in the N½ of the NE¼ of Section 28–154–101, a distance of between 300 and 400 feet.

"6. MDU has underbuilt its transmission line with a distribution line one quarter of a mile from the city limits of Ray, North Dakota, to enable it to serve the buildings of one Matt Anderson in Section 15–156–97.

"7. Amerada Petroleum Corporation caused construction of and paid for and owns electric distribution facilities tapping a transmission line of MDU adjoining Section 34–157–95.

"8. MDU is lawfully rendering electric service in the districts wherein each of the facilities described in the above findings is situate, save that involving Amerada Petroleum Corporation, and had been rendering such service prior to February, 1953.

*　*　*　*　*　*

"10. None of the extensions of the facilities of MDU at issue herein cause any unreasonable interference with the system or service of the Williams Electric Cooperative, Inc."

Based on the findings quoted, the Public Service Commission made the following conclusions of law:

"1. The enforcement of contractual rights and obligations and the constitutionality of the provisions of the statutes enacted by the Legislature of this state are judicial functions or questions; under Article 4, Section 85 of the Constitution of this state, the judicial power is vested in the Courts; this Commission cannot, therefore, enforce contractual rights or pass upon the constitutionality of any statute.

"2. The extension of the electric distribution system of MDU for the purpose of rendering service to Blox, Inc., North Dakota Concrete Products Co., Williston Basin Refining Corporation and Matt Anderson as hereinbefore described was not unlawful.

"3. MDU is lawfully selling electric energy to Amerada Petroleum Corporation in Section 34–157–95, Williams County, North Dakota.

"Wherefore, it is ordered that the complaint of the Williams Electric Cooperative, Inc., be, and it is hereby, in all things dismissed."

The trial court made findings of fact and conclusions of law affirming the dismissal of the appellant's complaint and judgment was entered accordingly.

■ The right of the appellant to seek a review of the order of the Public Service Commission derives from the Administrative Agencies, Uniform Practice Act, Chapter 28–32, NDRC 1943. The scope of the review is set forth in Section 28–3219 thereof. It states:

" * * * the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this chapter have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not af-

forded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact."

■ This court has held that the courts do not have the jurisdiction, primarily, to decide administrative questions assigned to the public utilities commission (PSC) for determination and where such commission in its proceedings furnishes due process of law and there is substantial evidence to support the findings of the commission, the courts have no authority to substitute their judgment for that of the commission. Application of Theel Bros. Rapid Transit Co., 72 N.D. 280, 6 N.W.2d 560; Application of Ditsworth, 78 N.D. 3, 48 N.W.2d 22. See also Great Northern Ry. Co. v. McDonnell, 77 N.D. 802, 45 N.W.2d 721.

As a reviewing court, on appeal, our inquiry will be directed as to the jurisdiction of the Public Service Commission to construe and enforce the contract dated July 21, 1952, between the appellant and the respondent, as to whether the findings of the Public Service Commission are supported by substantial evidence; whether its construction of the applicable law is proper, and whether the appellant has been afforded a fair hearing.

The growth of the Williston community and its consequent need for electric power precipitated a dispute between the appellant and the respondent concerning the right to serve customers in the area. To settle their differences they entered into an agreement dated July 21, 1952, the pertinent portions of which are as follows:

"Now Therefore, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

"1. That the map attached hereto marked Exhibit 'A' and made a part hereof is a true representation of the

Williston community and surrounding area experiencing growth and development wherein the dispute exists between the parties as to the right to serve new customers with electricity and there is indicated thereon by a heavy red line the boundary to be observed by the parties, the Cooperative to render electric service to new customers situated to the west, north and east of said red line and the Company to render electric service to new customers within the boundaries of said line.

\* \* \* \* \* \*

"6. If this agreement or any portion thereof is in conflict with the franchise held by the Company in the City of Williston, the laws of the state pertaining to the Public Service Commission and the rules and regulations set up by said Commission, the decision of any court, or comes in conflict with such franchise, laws, court decisions, future legislation, or if unforseen developments or contingencies arise, the party hereto affected thereby may give written notice to the other party advising it of such developments and request that the parties meet in an effort to resolve such differences. If the same cannot be resolved, this agreement shall thereupon be terminated and the parties may pursue their respective courses without regard to this agreement."

At the time the agreement was entered into there was before the Public Service Commission a complaint filed by the appellant based upon which the Public Service Commission had entered an order against the respondent to cease and desist, the agreement in this connection provided:

"The cooperative will immediately withdraw the complaint it has filed with the Public Service Commission and ask the Public Service Commission to dissolve the Cease and Desist Order it has issued based upon said complaint and dismiss the pending proceedings."

Upon execution of the agreement the appellant complied with this provision. Attached to the agreement is a map referred to as Exhibit A. This map blocks off by red lines the areas in which each party was to operate.

The appellant contends that the agreement remains in full force and effect and the evidence presented clearly indicates that the appellant was contending that there had been a breach of the agreement and violations of its terms and that it was seeking its enforcement. The respondent denied that there had been any breach or violation of the agreement, disputed the construction and interpretation placed upon it by the appellant, and insisted that its extensions of electrical distribution and transmission lines to the parties complained of were within the terms of the statutes and that it had not only the authority, but the obligation, to make these extensions when requested by some of the parties involved in these proceedings.

The first question for our determination is whether or not the Public Service Commission has jurisdiction to construe and enforce the contract entered into between the appellant and the respondent on July 21, 1952.

The Public Service Commission determined that the enforcement of the contractual rights and obligations and the constitutionality of Chapter 285, SLND 1953, raised by the respondent, are judicial functions vested in the courts of the state.

The three Public Service Commissioners are constitutional officers. Section 82, North Dakota Constitution. Their duties and powers are prescribed by law. Section 83, North Dakota Constitution.

"The board of railroad commissioners has only such powers, in the regulation of public utilities, as have been conferred upon it by the Legislature. Chrysler Light & P. Co. v. Belfield [58 N.D. 33] 224 N.W. 871, 63 A.L.R. 1337." Otter Tail Power Co. v. Clark,

59 N.D. 320, 331, 229 N.W. 915, 919; Lyons v. Otter Tail Power Co., 68 N.D. 403, 280 N.W. 192.

■ The general jurisdiction of the Public Service Commission over public utilities is set forth in Section 49-0201, NDRC 1943. Its specific powers with reference to public utilities are enumerated as set forth in Section 49-0202, NDRC 1943, as amended. We have found no statute or provision in the North Dakota Constitution that vests judicial power in the Public Service Commission. Judicial power is vested in the courts, Article IV, Section 85, of the North Dakota Constitution. If any contractual rights exist between the appellant and the respondent under the agreement dated July 21, 1952, which we do not determine, the enforcement of such rights must be sought in the courts of this state. No judicial power being vested in the Public Service Commission of this state, it has no jurisdiction to adjudicate the alleged contractual rights of the parties to the agreement, and the participation of the Commission, or some of its members, in the negotiations preceding its execution is wholly immaterial. The Commission did not approve the agreement of July 21, 1952, by any formal act. See Trico Electric Cooperative v. Ralston, 67 Ariz. 358, 196 P.2d 470; Motor Transit Co. v. Railroad Commission, 189 Cal. 573, 209 P. 586, 589. The last case cited said:

"This disposes of petitioners' contention that the Commission is by its order in effect enforcing a private contract between individuals which, of course, the Commission is not empowered to do. Western Ass'n of Short Line Railroads v. Railroad Commission, 173 Cal. 802, 162 P. 391, 1 A.L.R. 1455. The fact that an order of the Commission, given in pursuance of the Commission's power and under the Commission's duty to regulate public utilities and compel the performance of their duties to the public, incidentally requires the petitioners to do an act

which carries out the terms of a private contract, does not, of course, operate to divest the Commission of its jurisdiction."

■ The Public Service Commission of this state is not charged with the enforcement of private contracts. Its function is to regulate public utilities and not to compel the enforcement of contractual obligations. Atchison, T. & S. F. Ry. Co. v. Railroad Commission, 173 Cal. 577, 160 P. 828, 2 A.L.R. 975. This is also clearly the import of Otter Tail Power Co. v. Clark, 59 N.D. 320, 331, 229 N.W. 915, 919, in which this court quoted with approval from the case of Hanlon v. Eshleman, 169 Cal. 200, 146 P. 656, 657, P.U.R. 1915B, 842:

" 'With the rights of an intending purchaser the commission has nothing to do. Nor has it power to determine whether a valid contract of sale exists, or whether either party has a legal claim against the other under such contract. These are questions for the courts, and not for the railroad commission, which is merely authorized to prevent an owner of a public utility from disposing of it where such disposition would not safeguard the interests of the public.' "

■ As a general rule administrative agencies, boards, and commissions cannot consider, or adjudicate, contractual rights and obligations between parties. Hence they cannot pass on the validity of, or enforce, nor can administrative agencies, boards, or commissions change or annul contracts, except where they have been granted power by organic or valid statutory enactment to do so. 73 C.J.S., Public Administrative Bodies and Procedure, § 68, Determination of Contractual Rights, pp. 393 and 394, and cases cited in notes 66 to 73, inclusive. The Public Service Commission has no power to construe, enforce or adjudicate the validity or effect of the contract between the parties in question except as to its effect upon matters within its

jurisdiction. That jurisdiction is dependent upon the statutes.

 Insofar as the appellant and respondent, in this proceeding, seek the construction, interpretation and enforcement of the agreement of July 21, 1952, the Public Service Commission correctly determined that it was without jurisdiction. Since the Public Service Commission has no jurisdiction to enforce the contractual obligations of the parties to this proceeding, under the agreement, if any exists, the next question for our determination is whether the extensions of the transmission and distribution lines made by the respondent, and complained of, are in violation of law.

The Public Service Commission concluded as a matter of law that the extension of electric service by the respondent to Blox, Inc., North Dakota Concrete Products Company, the Williston Basin Refining Corporation, and Matt Anderson, were lawful, and that the respondent was lawfully selling electric energy to Amerada Petroleum Corporation in Section 34–157–95.

It will be noted that the Public Service Commission made no specific findings with reference to the service furnished to the Edward Hamann property. In preliminary discussion to its findings it said:

"Furthermore, there is testimony of the manager of the cooperative to the effect that service to Edward Hamann, * * * was not complained of as contrary to the statute. Technically, therefore, the extension of MDU's system undertaken for the purpose of serving Edward Hamann or Njos Bros. may not be properly before us. We do not mean to imply, however, that if service or construction to these customers were properly before us that our decision would be any different as to such issues."

The trial court made a specific finding with reference to the Edward Hamann property. The evidence shows that the Njos Brothers property is being served with electrical energy by the appellant.

The appellant contends that the extensions of the transmission and distribution lines of the respondent to enable it to give electrical service to the parties complained of was unlawful and was made by the respondent without a certificate of public convenience and necessity required by Section 49–0301, NDRC 1953 Supp.

"Certificate of Public Convenience and Necessity; Secured by Public Utility. No public utility henceforth shall begin in the construction or operation of a public utility plant or system or extension thereof, without first obtaining from the commission a certificate that public convenience and necessity require or will require such construction and operation. This section shall not be construed to require any such public utility to secure such certificate for:

"1. An extension within any municipality or district within which it has lawfully commenced operations;

"2. An extension within or to territory already served by it necessary in the ordinary course of its business; or

"3. An extension into territory contiguous to that already occupied by it and not receiving similar service from another utility, or electric cooperative corporation or if no certificate of public convenience and necessity has been issued to any other public utility.

If any public utility in constructing or extending its line, plant, or system, unreasonably interferes with or is about to interfere unreasonably with the service or system of any other public utility, or any electric cooperative corporation, the commission on complaint of the public utility or the electric cooperative corporation claiming to be injuriously affected, after notice and hearing as provided in this title, may

make such order enforcing this section with respect to such public utility and prescribe such terms and conditions as are just and reasonable."

There is no evidence to show that the electrical facilities furnished to the parties mentioned in appellant's complaint interfere unreasonably with the service or system of the appellant.

The question presented is whether or not the extensions made by the respondent of its transmission and distribution lines to the parties mentioned are lawful under the exceptions of the statute just cited. A thorough consideration of the evidence indicates that if the respondent has lawfully extended its lines to the parties mentioned in the complaint, its authority to do so must be found in subsection 3 thereof. If it may do so under that provision of the statute, it is not necessary for us to consider subsections 1 and 2 thereof.

 Under subsection 3 of Section 49–0301, NDRC 1953 Supp., three requisites must exist to eliminate the procurement of a certificate of public convenience and necessity. They are:

1. The utility is not required to have a certificate if the extension is into *territory contiguous* to that already occupied by it, and

2. Not receiving similar service from another public utility or electric cooperative corporation, or

3. If no certificate of public convenience and necessity has been issued to any other public utility.

What is meant by the words "territory contiguous"? The main object sought in the construction of a statute is to ascertain and give effect to the intentions of the legislature. Up to and until the advent of electric cooperative corporations, Chapter 115, SLND 1937, NDRC 1943, 10–1301 et seq., the general public was wholly dependent upon public utilities for electrical service.

No doubt the legislature had in mind at the time of the enactment of Chapter 235, SLND 1927, now Section 49–0301, NDRC 1953 Supp., the desirability of the procurement and the benefits to be derived from the use of electrical energy. It was common knowledge that as of the time of the enactment of this law extensions had been made beyond the borders of organized cities and villages and that fact may have been a consideration in providing the exceptions made in the statute. The only material change in the statute from the date of its original enactment until the enactment of Chapter 285, SLND 1953, was the addition in subsection 3 of Section 49–0301, NDRC 1953 Supp., of the words "or electric cooperative corporation". It is also reasonable to suppose that the legislature had in mind the avoidance of conflicts that might arise by reason of competition between public utilities, or after the enactment of Chapter 285, SLND 1953, between public utilities and cooperative corporations.

In what may be called its primary sense, "contiguous" has been defined as meaning immediately successive; in actual, close, or in actual or close, contact. Likewise, "contiguously" has been defined as meaning in contact with; joining; touching; touching along a considerable part or the whole of one side; touching or joining at the edge or boundary. 17 C.J.S., Contiguous, pp. 178, 179. In Griffin v. Denison Land Co., 18 N.D. 246, 252, 119 N.W. 1041, 1043, this court defined the word "contiguous":

"The Century Dictionary defines the word as: 'Touching; meeting or joining at the surface or border.' The Standard Dictionary: 'Touching or joining at the edge or boundary; close together; adjacent; adjoining; followed by to.' The Thesaurus Dictionary defines 'contiguous' as 'touching or joining at the edge or boundary.' Webster says it is from the Latin word

'contiguus,' akin to contingere, 'to touch on all sides,' and then follows this definition: 'In actual contact; touching; also adjacent; near; neighboring; adjoining.' He refers for an illustration of its meaning to 'contiguous angles,' and defines 'contiguous angles' as such angles as have one leg common to both angles. Applying the Webster definition of contiguous angles, which we think furnishes the most pertinent definition of the word in this connection, 'contiguous tracts of land' must be tracts or bodies of land which have one side, or at least part of one side, in common." See also Lien v. Northwestern Engineering Co., 73 S.D. 84, 39 N.W.2d 483, 489.

"Contiguous territory" has been defined as "Territory touching, adjoining and connected, as distinguished from territory separated by other territory." 17 C.J.S., Contiguous Territory, p. 180.

Applying these various definitions of "contiguous" and "contiguous territory" to the wording of our statute, which recites "territory contiguous to that already occupied", it refers to an area composed of one or more tracts of land owned by one or more persons, joined together by a common boundary on all or part of one or more sides, common with territory in which the utility was authorized to serve or in which it had lawfully commenced operation, and which area or territory of proposed service was not separated from the authorized territory by tracts "receiving similar service from another utility, or electric cooperative corporation or if no certificate of public convenience and necessity has been issued to any other public utility."

■ When these various definitions are thus applied, it appears that the intent was not to permit a utility or electric cooperative corporation to leapfrog its operations across an area which was either receiving similar service from another public utility or electric cooperative corporation, or in

which similar service by another utility had been authorized. The purpose was to eliminate, in such instances, insofar as possible, economic waste, without deterring the extension of the availability of electrical service. As long as a public utility desiring to extend its electric service beyond territory in which it has authority to operate can show that its extensions are in "territory contiguous" to that which is receiving service from it, and not receiving similar service from another utility, or electric cooperative corporation, or has not had service authorized by another utility, connecting the point of proposed service with territory "already occupied", is lawful and within the terms of the statute and may be made without a certificate of public convenience and necessity.

It appears from the evidence that none of the extensions complained of by the appellant were receiving similar service from it. At most the evidence shows that the appellant's electrical lines were so located as to enable it, by construction of extensions, to furnish electrical service to the parties complained of, and that it was ready, able and willing to furnish such service.

■ As contained in the statute, what is meant by the words "not receiving similar service"? The word "receive" is, like many other words in our language, a relative term, and its meaning or signification may differ according to the circumstances and connection in which it is employed. The ordinary and usual meaning of the term is that something has been taken into possession, and in its commonly accepted meaning it carries with it the concept that something has been physically delivered or placed in the hands of the recipient. 75 C.J.S., Receive, p. 642. Labarthe v. McRae, 35 Cal.App.2d 734, 97 P.2d 251, 253; Public Utilities Commission v. Congdon, 137 Me. 216, 18 A.2d 312, 315; Webster's New International Dictionary, 2d Ed., Unabridged; 36 Words and Phrases, Receive, p. 446.

As used in the statute, the phrase "not receiving similar service from another utility, or electric cooperative corporation", has reference to service in fact as distinguished from ability to give service. It denotes actual physical delivery of electrical energy. There is no language in the statute from which it may be gathered that it was the intent of the legislature to extend the force of the statute to territory in which a utility or electric cooperative merely had the ability or desire to deliver electrical energy.

■ This construction of the statute makes it clear that the respondent was not required to obtain a certificate of public convenience and necessity for any of the extensions complained of. The Public Service Commission concluded that the extensions of the electric distribution system of the respondent enabling it to render service to Blox, Inc., North Dakota Concrete Products Company, Williston Basin Refining Corporation, and Matt Anderson were not unlawful. In other words they were within the terms of the statute. While the Commission did not specify under what exception in the statute they deemed the service rendered by the respondent lawful, the evidence shows that the extensions were made to "territory contiguous to that already occupied by it and not receiving similar service from another utility, or electric cooperative", nor were they in territory for which a certificate of public convenience and necessity had been issued to any other utility. The trial court not only included those mentioned in the findings of the Public Service Commission, but made a specific finding with reference to the Edward Hamann property, and also further found as a fact that the evidence failed to establish that the extensions of the electric distribution lines of the respondent to the parties were not in territory contiguous to that already occupied by the respondent, and further that the evidence failed to establish they were receiving similar service from any other public utility or from any electric cooperative or that a certificate of public convenience and necessity had been issued to any other public utility for such territory. The findings of the Commission are supported by substantial evidence.

It is argued that since the respondent made extensions to the Edward Hamann property on or about February 2, 1953, and to Blox, Inc., about the middle of February 1953, that these extensions are not within the issues since Chapter 285 of the 1953 Session Laws did not become effective as the law of this state until March 12, 1953. But it becomes unnecessary to consider that question in view of our determination that all of the extensions complained of were within the terms of the statute and, therefore, lawful.

■ The next question for determination is whether or not the appellant has been denied a fair hearing and due process of law. This contention is based primarily upon three propositions; first, that a fair hearing has been denied the appellant by the refusal of the Public Service Commission to grant permission to file a second amended complaint to cover alleged violations, both under the contract between the parties and under the statute, to parties other than those set forth in the amended complaint. It will be recalled that the hearing of October 16, 1953, was recessed to allow the appellant to file and serve an amended complaint to cover alleged violations by the respondent of the construction of extensions not mentioned or referred to in the original complaint. Upon resumption of the hearing on November 30, 1953, the appellant endeavored by cross-examination of the witness, Gamble, one of the officers of the respondent, to show alleged violations other than those set forth in the amended complaint. Objection to this cross-examination was sustained by the Commission as being beyond the scope of the appellant's complaint. Thereupon the appellant offered to amend its complaint to

allege other and further violations. This motion was denied and the appellant assigns this ruling as error.

The appellant had been granted the right to amend its original complaint once. If further violations had come to its knowledge between the time of the filing and service of the amended complaint and the resumption of the hearing, there was nothing in the nature of the proceeding that would foreclose the right of the appellant or any other person to lay such violations before the Public Service Commission by filing a new complaint. This proceeding is only conclusive upon the issues and alleged violations presented by the amended complaint. While the Public Service Commission has authority to permit amendments of complaints under its rules, there is nothing in the nature of the instant proceeding which would indicate that its refusal to allow the amendment of the complaint the second time constituted an abuse of discretion.

"Allowance, during the course of the proceedings, of amendments to the pleadings, including an amendment to conform the pleadings to the proof, is in the discretion of the officer before whom the proceeding is conducted." 42 Am.Jur., Public Administrative Law, Section 126, page 460.

If, in fact, the extensions were being made by the respondent into territory which the appellant claims is reserved to it, under the statute, it has the right to complain and file a new complaint to cover such alleged violations.

It is clear that if the appellant (complainant before the Public Service Commission) is permitted to assert, after a hearing is in progress, other alleged violations not within the pleadings before the Commission, and requests permission to amend its complaint to cover such violations, that in order to enable the respondent to meet the issue thus created, it would be necessary to postpone the hearing to allow time to obtain information and data that would enable it to controvert the issue thus created. Thus it would be possible to extend the completion of a hearing and considerably delay the final determination of the issues. Under the circumstances the refusal of the Public Service Commission to grant the appellant the right to amend its complaint the second time, did not constitute an abuse of discretion.

Second, the appellant contends that it was denied a fair hearing based on failure of the Commission in the course of the hearing to take notice of other proceedings concerning the respondent before the Commission, to which the appellant was not a party, without the production of the files of which the appellant wanted notice taken. Section 28-3207, NDRC 1943, permits an administrative agency to avail itself of competent and relevant information or evidence in its possession, or furnished by members of its staff, or secured from any person in the course of an independent investigation conducted by such agency, in addition to evidence presented at any formal hearing. If it desires to use such information it may do so after transmitting a copy of it for the evidence or abstract thereof to each party of record in the proceeding and after affording each such party, upon written request, an opportunity to examine such information or evidence and to present evidence in connection therewith and to cross-examine the person furnishing such information at a further public hearing to be called and held upon at least ten days' notice given by registered mail.

The facts show that the appellant was attempting to procure access to the entire file dealing with the approval of a service contract between the Williston Basin Refining Corporation and the respondent dealing with its proposed service to the refinery and the terms thereof. Mere approval of the contract would be ineffectual to confer authority upon the respondent to render the service, the subject of the contract, unless the extension of such service by the re-

spondent was within the terms of the statute. Its right to construct the extension necessary to enable it to render such service must be based on the statute. The production of the entire file, therefore, would not establish the right of the utility to extend its service to the refinery and thus would not be of any probative value in the determination of the issue involved. If it was error to deny the appellant access to the file, it was error without prejudice.

■■■■ Third, the denial of a fair hearing is also predicated upon the refusal of the Commission to allow the appellant to cross-examine Mr. Gamble, an officer of the respondent, with reference to a certain certificate of public convenience and necessity which he held in his hand for the purpose of refreshing his memory. The appellant demanded that the document be produced as an exhibit for the purpose of cross-examination. This was denied for a time, but eventually the exhibit was produced by counsel for the respondent, identified, and is in evidence. The appellant had a right to cross-examine the witness with respect to the document used to refresh the recollection of the witness. Dr. R. D. Eaton Chemical Co., v. Doherty, 31 N.D. 175, 189, 153 N.W. 966, 970. See also Jones on Evidence, Civil Cases, Third Edition, Section 876, p. 1382, and Wigmore on Evidence, Third Edition, Section 762, p. 108. The evidence discloses that the appellant had an opportunity to cross-examine the witness with respect to this exhibit after it was received. If it was error not to produce the document immediately upon demand, such error was cured by its production and the opportunity used, by the appellant, to cross-examine the witness concerning the same.

"As applied to administrative officials, agencies, and bodies, due process of law is not a term of fixed and invariable content, and greater flexibility has been given to the term when applied to administrative agencies than when applied to a judicial tribunal. No particular form of proceeding is requir-

ed to constitute due process in administrative proceedings; all that is required is that the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. Its requirements include the revelation of the evidence on which a disputed order is based, an opportunity to explore that evidence, and a conclusion based on reason; and its essential requirements are met where the administrative body is required to determine the existence or nonexistence of the necessary facts before any decision is made." 73 C.J.S., Public Administrative Bodies and Procedure, § 60, p. 385.

■■■ Whether a person or party has been deprived of due process of law by the action of an administrative agency or body depends on whether it acted contrary to the statutes and rules and with arbitrary and unreasonable discrimination. A study of the evidence and the applicable statutes involved in this proceeding indicates that all the evidence and the applicable statutes were thoroughly considered by the Public Service Commission. The trial court, after comprehensive study of the record reached the same result as the Commission. The appellant has had a fair hearing.

The appellant urges that the case of Kosciusko County Rural E. M. Corp. v. Public Serv. Comm., 225 Ind. 666, 77 N.E.2d 572, determines the issues now before us. We conclude from a study of the decision that it is not applicable. Indiana has no statute similar to Section 49–0301(3), NDRC 1953 Supp., and the case holds that a rural electric membership corporation is a public utility. No such determination has been made in this state. In fact, under the statutes then existing, May 27, 1946, when the appellant obtained authority to construct, operate, and maintain its electric lines, the Public Service Commission concluded that it was "not a public utility."

In view of our disposition of the issues presented in this proceeding it becomes unnecessary to consider the alleged uncon-

stitutionality of Chapter 285 of the 1953 Session Laws, which is based upon the argument that there is bestowed upon an electric cooperative under such statute, the right to complain of unreasonable interference by a public utility without conferring a similar right upon the utility with reference to unreasonable interference by an electric cooperative corporation. Nor is it necessary for us to make any reference to rule number 23 of the Commission.

The judgment of the trial court is affirmed.

BURKE, C. J., and SATHRE, MORRIS, and GRIMSON, JJ., concur.

On Petition for Rehearing

JOHNSON, Judge.

The appellant's petition for rehearing is devoted solely to the contention that it has been deprived of a fair hearing.

Syllabi 4, 5 and 6 of the opinion filed in this case September 27, 1956, constitute our determination of the principal issues presented upon this appeal. Our determination of the right of the respondent to make the extensions complained of without a certificate of public convenience and necessity was based upon interpretation of the applicable statute, Section 49–0301(3), NDRC 1953 Supp. In other words the authority of the respondent to do what was done here rests upon the power granted by statute. Thus, after our determination that the Public Service Commission was without jurisdiction to construe, interpret, and enforce the agreement of July 21, 1952, the remaining issue involved the interpretation of the statute to ascertain what grant of power was involved and its application to the facts.

 It is, of course, elementary that even in an administrative hearing the issues are limited to those raised by the pleadings and a hearing should be confined to the

points at issue. Here primarily two points were at issue, did the Public Service Commission have the power to construe, interpret and enforce the agreement of July 21, 1952, and did the respondent have a statutory right to make the extensions complained of? Since the Commission did not have jurisdiction of the alleged contractual rights and obligations of the parties, then the authority of the respondent to make the extensions was to be derived from the power granted by the statute, or it did not exist.

The appellant devotes considerable argument to the contention that somehow the material in the file relating to the approval of the service contract, entered into on October 12, 1953, between the Williston Basin Refining Corporation as the "customer" and the Montana Dakota Utilities Company, as the "company" had a bearing on the issue. It insists that our statement that:

"Second, the appellant contends that it was denied a fair hearing based on failure of the Commission in the course of the hearing to take notice of other proceedings concerning the respondent before the Commission, to which the appellant was not a party, without the production of the files of which the appellant wanted notice taken",

was incorrect. If the quoted language is a misconstruction of the situation and of the record, it is, as we shall see, wholly immaterial. In dealing with this matter we did say:

"Its (referring to the respondent) right to construct the extension necessary to enable it to render such service must be based on the statute. The production of the entire file, therefore, would not establish the right of the utility to extend its service to the refinery * * *."

Counsel for appellant had demanded the production of the file. He said:

"We want the file produced so that we can see the order which Mr. Gamble has testified has been entered."

▆▆▆▆ In the ensuing argument and comment, after this statement, the Commission indicated that it would take notice of this file. The file itself is not in evidence. The appellant insists that it is in evidence on the theory that the Commission had indicated that it would take notice thereof. While an administrative agency, or person conducting an investigation or a hearing, may waive the usual common law or statutory rules of evidence if such waiver is necessary to ascertain the substantial rights of all the parties to the proceedings, it may only consider and accept evidence of probative value. No information or evidence except as otherwise provided in Chapter 28-32, NDRC 1943, "shall be considered." Section 28-3206, NDRC 1943. Then follows Section 28-3207, NDRC 1943, dealing with the consideration of information not presented at a formal hearing. The Public Service Commission was without statutory authority to consider evidence or information in its possession or furnished by members of its staff or secured from any person in the course of an independent investigation by it, in addition to the evidence presented at the formal hearing, without compliance with the terms of this statute. We must presume that if "extra record" evidence or information was in the possession of the Commission bearing on the issue, that the Commission would have complied with the terms of the statute and thus have given opportunity to the appellant to cross-examine, answer or refute concerning such evidence or information or to meet it in some other way. Since this was not done, the presumption prevails that no "extra record" evidence or information entered into the decision of this proceeding by the Public Service Commission.

What has already been said would perhaps suffice to answer the appellant's contention that the file in question was before the Commission by reference and that it did not have an opportunity to answer, explain, refute or cross-examine upon its contents; that consequently it has been denied a fair hearing. But assuming that its contents were examined and considered by the commission, although there is no evidence of that in the record or the findings and decision of the Commission, the question remains how its contents could have any possible relation to the primary issue involved. The appellant states that we cannot possibly tell because we do not know its contents. But we do know the primary issue in this proceeding was the matter of the application of a statute to an existing situation. The only facts material to the proper application and interpretation of the statute were those showing the locations of the extensions made and that the parties to whom the extensions had been made were not receiving similar service from that furnished by the respondent from another utility, or electric cooperative corporation, or that no certificate of public convenience and necessity had been issued to any other public utility. Those facts are all in evidence. Upon their consideration and the interpretation of the statute the decision was made. Inquiries as to other facts would of necessity lead to evidence unrelated to and outside of the issue. But because of the earnest contention made we will examine the question further.

The service contract is before us as Exhibit 23. It deals solely with the rights of the parties for the sale and purchase of electrical energy. Just what relevancy the proceedings leading up to the approval of the service contract could possibly have on the determination of the statutory interpretation involving the right of the respondent to make the extensions complained of without a certificate of convenience and necessity, the appellant does not explain. If they have no relevancy to the issue, they of necessity are of no probative or evidentiary value in the solution of the issue.

▆▆▆▆ It is an elementary rule of evidence that matters offered must be relevant

to the issue of the case and tend to establish or disprove them. Irrelevant facts and circumstances, that is those which do not throw any light upon, or have no logical relation to the facts in issue, which must be established by one party or disproved by the other, or which are remote and collateral, are not properly admissible in evidence. This principle is applicable to records as evidence. See 20 Am.Jur., Evidence, Section 246, pages 239 and 240. Here the primary issue was whether or not, under the statute, the respondent could make the extensions complained of without a certificate of convenience and necessity. It is perfectly obvious that if the respondent had no right to make the extensions under the statute, without such certificate, it was in no position to render service to the Williston Basin Refining Corporation. The execution of the service contract by the parties thereto and its approval by the Public Service Commission would thus be wholly immaterial to the issue. The provisions of the service contract and the evidence leading to its approval could not possibly bear upon the issue. Any inquiry concerning matters relating to the service contract would of necessity be collateral to the primary issue involved in this proceeding. Inquiry must end somewhere.

 Where inquiry must of necessity lead to the pursuit of evidence upon a collateral matter to the issue under consideration, inability to pursue such inquiry will not result in the denial of a fair hearing. The term "fair hearing", does not imply the right to have witnesses summoned for questioning on irrelevant matters. 35 C.J.S., Fair Hearing, p. 483. The fact that the Commission indicated that it would take notice of the contents of the file, is not to say that it did in fact do so. The record indicates that it did not take any cognizance of the contents of the file. It determined the issue before it by stating that it had no jurisdiction over the alleged contractual rights and obligations of the parties under the agreement of July 21, 1952, and that the extensions made were not unlawful.

We are entirely in accord with the rule noted by the appellant from 42 Am.Jur., Public Administrative Law, Section 140, pages 483 and 484, which states:

"A party to an administrative hearing is entitled to know the witnesses and the evidence against him. There is no hearing when the party cannot know what evidence is offered or considered and is not given an opportunity to test, explain, or refute."

"Supreme Court decisions on official notice, properly interpreted, form a highly satisfactory body of doctrine, perfectly consistent with the thesis that the sole test of the validity of administrative resort to extra-record materials is whether or not the parties have adequate opportunity to meet those materials in the appropriate fashion." Davis on Administrative Law, Section 156, page 510.

It is apparent here that no "extra record" evidence was considered by the Public Service Commission in arriving at its decision.

One of the cases upon which the appellant seems to rely heavily, Ohio Bell Teleph. Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093, is not in point here. That case involved telephone rates. In that case it was held that a denial of due process of law resulted where the basis for an order requiring a telephone company to refund to its patrons "excess" earnings collected during a series of years, a state commission valued the company's property for each of these years by applying to the value in an earlier year, which it had determined on hearings, price trend percentages said to have been derived from evidence of which the Commission took official notice, but which it withheld from the records and refused to reveal. This evidence had a direct bearing upon the issue

which was the main purpose of the investigation. Here we have an entirely different situation. The determination of the issue involved depended upon statutory interpretation. No matter what the files which appellant insists are in evidence by reference contained, such evidence could have no possible bearing, nor would it aid or assist in the interpretation of the statute from which we deduced that the power existed authorizing the extensions made and complained of in this proceeding.

What has been said here with reference to the file leading to the approval of the service contract between the Williston Basin Refining Corporation and the respondent also applies to Case No. I–1935. The appellant complains that it was not furnished copies of the documents involved in that case. The only document which the respondent requested be noted by reference was the certificate of convenience and necessity issued in Case No. I–1935. It is true no copies were furnished but the original certificate is in evidence. It was introduced by the respondent to show that it had been serving Ole Qualey in Section 28–154–101 under authority of the certificate. Ole Qualey was located in territory contiguous to that of some of the parties to whom the respondent had made extensions. In other words the purpose of the certificate was to show that the extensions were made to territory that was within the terms of the statute. We referred to this exhibit in our main opinion. The appellant had an opportunity to cross-examine concerning it. If it was desirous of obtaining other evidence from the file in which this certificate was contained, there is no reason why it could not have had access to it. The file apparently was available at the time. The Commission had the file at the hearing. If the appellant felt that the file was of any material value or constituted proper proof in connection with this case, there was no reason why it could not have requested a recess for the purpose of examining the file to determine what, if anything, therein contained was material, and then ask leave to use it and substitute certified or photostatic copies of the evidence thus submitted. At any rate it is very difficult to comprehend why the contents of this particular file would have any bearing upon the essential issue here, that of interpretation of a statute. The certificate was issued nearly sixteen years before the appellant obtained its authority to construct, operate and maintain its electric lines. It was not incumbent upon the respondent to furnish copies to the appellant of a record available to it and the failure of the respondent to furnish copies does not in itself constitute a denial of a fair hearing. To render a hearing unfair the defect or the practice complained of must be such as might lead to a denial of justice, or there must be an absence of one of the elements deemed essential to due process of law. 42 Am.Jur., Public Administrative Law, Section 138, page 481. The evidence or information in the files referred to was not before the Commission. There is nothing in the record to show that such evidence or information was considered. No right of the appellant to test, explain or refute material evidence upon the issue was denied. A fair hearing was afforded the appellant. We adhere to our decision.

The petition for rehearing is denied.

BURKE, C. J., and SATHRE, GRIMSON, and MORRIS, JJ., concur.